**IN THE COURT OF APPEALS OF IOWA**

No. 15-2052
Filed March 9, 2016

**IN THE INTEREST OF A.L.,**
**Minor Child,**

**K.L., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

The mother appeals the termination of her parental rights to her child, A.L.

**AFFIRMED.**

Britt Gagne of Gagne Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Michelle R. Becker of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

The mother appeals the termination of her parental rights to her daughter, A.L. She asserts the court improperly concluded the State established grounds to terminate her rights pursuant to Iowa Code section 232.116(1)(d) and (h) (2015) and that she should be granted additional time to work towards reunification. We conclude that, because of A.L.'s special needs and the mother's inability to care for her properly, termination is appropriate under paragraph (h); furthermore, termination is in A.L.'s best interests, particularly given the parent-child bond is not strong. Consequently, we affirm the order of the juvenile court.

A.L., born January 2014, came to the attention of the Iowa Department of Human Services (DHS) after testing positive for morphine at the time of her birth. Though it was later determined the amount was consistent with the mother being given morphine during childbirth, no morphine was listed on the mother's medical chart. A.L. is a child with special needs, suffering from multiple birth defects and chromosomal abnormalities, including heart, respiratory, auditory, and orthopedic difficulties that result in her needing constant and long-term medical care. She requires a feeding tube, frequent trips to the doctor, as well as specialized equipment, such as a seating chair, a car chair, and a bath chair.

After her birth, A.L. remained in the hospital for three months until she was released to her mother. For the next several months of A.L.'s life, DHS provided the mother with services so A.L. could remain in her care, such as in-home nursing and help with attending to A.L.'s developmental needs. However, the mother could not care for A.L. properly, as she not only missed medical

appointments, but she stopped complying with in-home nursing services. Concern grew, and at a medical checkup in February 2015, it was apparent A.L. was not getting adequate nutrition. Over the mother's initial objection, A.L. was hospitalized and diagnosed with failure to thrive. When released from the hospital on February 27, 2015, A.L. was removed from the mother's care and placed in foster care, where she remained at the time of the termination hearing.

The mother was offered supervised visitation as often as she liked but was sporadic in taking advantage of the visitation opportunities. When the permanency order was entered on September 1, 2015, she became more consistent and saw A.L. more frequently, but that was only for a short time. Thus, a strong bond between the mother and A.L. was not evidenced. The mother was also offered services through ChildServe and Early Access, as well as mental health services, but she failed to take full advantage of them.

The mother currently lives with her mother, A.L.'s maternal grandmother. The mother informed the court that if A.L. were to be returned to her care they would live at her current residence. As of the time of the termination hearing, the mother was not employed.

Due to the mother's lack of consistent engagement with services, as well as her inability to understand the severity of A.L.'s condition, the State filed a petition to terminate the mother's parental rights on September 22, 2015, and a hearing was held on November 4, 2015. The district court ordered that the mother's rights be terminated on November 19, 2015. The mother appeals.[1]

---

[1] The father's rights were also terminated; however, he is not a party to this appeal.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.* To terminate the mother's rights under Iowa Code section 232.116(1)(h), the State must establish the child (1) is three years old or younger, (2) has been adjudicated a child in need of assistance, (3) has been removed from the home for six of the last twelve months, and (4) cannot be returned home at the present time. Iowa Code § 232.116(1)(h)(1)–(4). The mother only maintains the State did not prove the fourth element by clear and convincing evidence.

The record indicates the mother is not able to care for A.L. such that A.L. cannot be returned to her care at the present time. As the district court noted:

> [The mother] testified at the TPR hearing that she feels overwhelmed at times. She felt that she and [A.L.] were "thrown to the wolves" with having to "meet with all these people." She blames her reluctance to work with [A.L.]'s medical providers on wanting to protect her from having to go back to the hospital, having seen what the child went through when she was hospitalized after birth. She stated that "it's hard to deal with" the child's needs, and that "it sucks."

Nonetheless, the mother refused to attend mental health appointments or take advantage of services, and did not understand the amount of care required to keep A.L. healthy. The fact the mother has shown only minimal improvement since A.L.'s removal—which occurred due to A.L.'s hospitalization because of the

mother's neglect—indicates the mother cannot presently care for A.L.  *See id.* § 232.116(1)(h)(4).

Additionally, once the mother was referred to Early Access service providers, the district court observed that it "then embarked on a six-month Odyssey of trying to get [the mother] to consent to and engage in their services." It took the mother from April 9 until September 8, 2015, to cooperate with an evaluation so that services could be initiated on October 12, after the petition to terminate her parental rights had been filed.  Thus, despite the intervention of DHS and the multiple attempts by the providers to coax the mother to cooperate with the case plan, the mother showed little to no effort with regard to making progress so she could safely resume care of A.L.

Though she made some progress shortly before the termination hearing, in determining the future actions of the parent, her past conduct is instructive. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).  The mother's actions prior to the September permanency order demonstrate she neither possesses the skills nor the determination to acquire the skills necessary to care for A.L., and that she will not do so in the future.  Thus, an extension of time—particularly given the vast amount of services the mother has already received—would not likely result in reunification.  "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up."  *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2).  Moreover, the lack of engagement the mother has shown with A.L. has had a detrimental effect on the parent-child bond.  It is also encouraging that A.L. is thriving in the care of her foster parents, who have

indicated a willingness to adopt her. Therefore, we conclude it is in A.L.'s best interests that the mother's parental rights be terminated, and the parent-child bond does not prevent termination. Consequently, we affirm the order of the district court.

**AFFIRMED.**